Robert L. EATHERLY, d/b/a Eatherly Construction Company, Plaintiff-Appellee,

v.

MORC INDUSTRIES, INC., Edward R. Sczesny and Peter B. Curlin, Defendants-Appellants.

Court of Appeals of Tennessee, Middle Section.

April 26, 1979.

Certiorari Denied by Supreme Court July 30, 1979.

John J. Hollins, Hollins & Wagster, Nashville, for plaintiff-appellee.

R. B. Parker, Jr., Donald P. Paul, Parker, Nichol & Finley, Nashville, for defendants-appellants.

EWELL, Judge.

This is an appeal by defendants from a judgment entered in the Chancery Court of Davidson County, Tennessee, Judge Shelton Luton presiding, awarding to plaintiff damages in the amount of $746,623.82 for breach of contract.

The plaintiff, Robert L. Eatherly d/b/a Eatherly Construction Company (hereinafter referred to as Eatherly) sued the defendants, Morc Industries, Inc., a Kentucky corporation (hereinafter referred to as Morc), Edward R. Sczesny (hereinafter referred to as Sczesny) and Peter B. Curlin (hereinafter referred to as Curlin) for the balance due and owing under a written contract between Eatherly and Morc dated June 27, 1974, providing for the rental of certain equipment, including operators, to be used in the strip mining of coal on a tract of 140 acres located in Ohio County, Kentucky. Eatherly alleged that Curlin and Sczesny were jointly liable with Morc under the terms of a guaranty agreement dated August 12, 1974, and he sought to recover the total sum of $746,623.82 from all three defendants.

The defendants denied the validity of the guaranty agreement and insisted that Eatherly had fraudulently induced Morc to enter into the original contract, that the same had been amended or altered following execution thereof so as to delete certain obligations of Morc to Eatherly, and that Eatherly had breached the contract by his failure to perform according to the terms and conditions thereof including his failure to give proper notice of termination. The defendants further insisted that prior payments from Morc to Eatherly in the total amount of $1,211,069.00 constituted substantial overpayment and that Morc was not indebted further or otherwise to Eatherly.

In a cross-complaint the defendants sued Eatherly for damages, Morc seeking to recover for breach of contract, and Sczesny and Curlin each seeking to recover for defamation. Eatherly denied all material allegations of the cross-complaint.

Subsequently Eatherly amended his original complaint to further charge that Sczesny and Curlin were personally liable to him as the sole stockholders of Morc which Sczesny and Curlin were allegedly operating as individual partners appropriating corporate funds in substantial amounts to their joint and/or personal use. Sczesny and Curlin denied all material allegations of the amended complaint, and Sczesny specifically denied any knowledge of the details of the corporate affairs prior to the inception of this litigation.

Eatherly filed a motion for summary judgment on the cross-complaint, and the motion was sustained by the Court as to that portion of the cross-complaint seeking

damages for defamation. No appeal was taken from that ruling.

The defendants demanded a jury to try the issues of fact, which demand was granted by the Court over the objections of the plaintiff. The trial consumed six full days and four partial days over a period of two and one-half weeks. The transcript of the trial consists of nine volumes containing in excess of 1300 pages with 53 exhibits.

The material facts distilled from the voluminous record in this case are substantially as follows. In April of 1974 Sczesny and Curlin as the sole stockholders of Morc undertook to make arrangements to strip mine coal on 140 acres of land previously owned by Morc and then owned by W. D. Hayes, a former stockholder. Curlin had been personally acquainted with Eatherly for a number of years and was aware of the fact that Eatherly had a substantial amount of heavy equipment used for earth moving in connection with road contracts and water and sewer work. Curlin approached Eatherly with a proposal that Morc and Eatherly enter into a joint venture to strip mine the coal. Eatherly declined the offer but, following discussions with Curlin, entered into a contract with Morc for the rental of heavy equipment for use in the coal mining operation.

A formal contract was prepared by Eatherly's attorney and subsequently executed by Eatherly and by Curlin as president of Morc. Sczesny was familiar with the negotiations between Curlin and Eatherly, but he did not see the contract prior to its execution. Both Curlin and Eatherly were residents of Davidson County, Tennessee, and Sczesny resided in Michigan. With respect to Morc, Sczesny's role was to secure and/or provide financing and Curlin's role was to manage the corporation's day to day operation.

The contract between Eatherly and Morc recited that the 140 acre tract to be mined was owned by Morc. At the time of execution of the contract the property was titled in the name of Hayes, and within a period to two weeks title was transferred from Hayes to Sczesny. After Eatherly had been on the job a short period of time he became aware of the fact that title was vested in Sczesny and not in Morc, and he then insisted upon personal guaranty of payments to be made to him under the contract as a condition of his continuing with the work. The demands of Eatherly in this regard were satisfied by a letter of guaranty dated August 12, 1974, executed by Eatherly, Sczesny and Curlin.

The original contract basically provided that Eatherly would furnish materials and certain designated pieces of equipment with personnel adequate for the operation and maintenance thereof at a specified rental per hour plus other compensation and that Morc would provide the supervision and direction necessary in the performance of the work and compliance with the law. Morc was given authority to direct the areas to be mined and the land to be reclaimed as the work progressed. The letter of guaranty specifically provided that Curlin would "continue to be responsible and have full authority to administer this contract including any additional change orders that he sees necessary".

As the work progressed Eatherly put on the job substantially more equipment than listed in the original contract although the additional equipment was of the same kind, and he charged the specified contract rates for the various types of equipment used. These charges were from time to time honored and paid by Morc.

Several complications developed relating to (1) location of a boundary line of the 140 acre tract which directly affected the ability to strip mine in the preferred location; (2) the depth, quantity and source of water standing on the property; and (3) the amount of earth which had to be removed in order to reach the coal deposit. Because of these factors the period of time from the beginning of operation until the initial sale of coal was substantially longer than anticipated, and consequently there developed a cash flow problem early in the project. Morc was not financially able to make prompt monthly payments to Eatherly as provided in the contract, and this in turn

made it impossible for Eatherly to meet his obligations. Tension developed in the relationship between Eatherly and the defendants, Sczesny and Curlin; and there arose from time to time disputes and disagreements with reference to the quantity and quality of the work being performed by Eatherly and the amount and promptness of the payments being made by More.

In March, 1975, Curlin and Sczesny had their accountant examine the books of Eatherly in an effort to reconcile the records of More and those of Eatherly with respect to the amount then owed to Eatherly. The accountant reconciled the differences and determined that according to the books More owed Eatherly in excess of $300,-000.00. Subsequently Eatherly forwarded to More two additional invoices before quitting the project.

The proof showed that substantial sums of money received from the sale of coal mined by Eatherly did not pass through the bank account of More but were deposited to other bank accounts and used for purposes other than payments to Eatherly. The proof further showed that the stock of Curlin and Sczesny in More was never filled out; that there was no corporation directors' meetings or stockholders' meetings; and that there were no corporate minutes in existence.

After the contract between Eatherly and More was drafted several changes and/or amendments were allegedly made, and a substantial portion of the conflicting testimony related to the exact provisions of the contract binding upon the parties.

The primary factual issues raised by the defendants in their pleadings and proof were (1) whether or not Eatherly induced More to enter into the contract in question by fraudulent misrepresentations of material facts; (2) whether or not Eatherly forced defendants Sczesny and Curlin to execute the letter of guaranty against their will under extreme duress brought about by unwarranted threats to cease work on the project thereby causing economic ruin; (3) whether or not the original written contract was subsequently amended or modified by verbal agreement of the parties so as to provide for the placing by Eatherly of equipment on the job in addition to that equipment specifically called for in the original contract; (4) whether or not the original written contract was amended or modified by verbal agreement of the parties to provide that in any event the maximum compensation payable to Eatherly would be $9.50 or $12.00 per ton of coal mined; (5) whether or not the original written contract was amended or modified by verbal agreement of the parties so as to delete from paragraph four thereof the provisions for the payment of an additional 15% to Eatherly; and (6) whether or not the original written contract was amended or modified by verbal agreement of the parties so as to delete from paragraph five the provision for payment to Eatherly of $1.00 per ton of all coal mined.

The controverted material issues of fact were concisely stated by the Trial Court in eight issues submitted to the jury. On each issue there was conflicting testimony, and the jury resolved all issues in favor of the plaintiff and against all defendants as follows:

1. Did plaintiff Eatherly intentionally or fraudulently misrepresent any material fact to defendants Sczesny or Curlin or either of them whereby they were persuaded against their will to enter into the agreements upon which plaintiff Eatherly seeks to recover judgment?

NO

2. Did plaintiff Eatherly intentionally threaten to do or to cease doing anything in connection with the agreements upon which he seeks to recover judgment whereby defendant Sczesny was forced against his will to sign the letter of guaranty which is an exhibit in this case?

NO

3. Did plaintiff Eatherly intentionally threaten to do or cease doing anything in connection with the agreements upon which he seeks to recover judgment whereby defendant Curlin was forced against his will to sign the letter of guaranty which is an exhibit in this case?

NO

4. Did plaintiff Eatherly sufficiently perform his obligations under the agreement sued upon to entitle him to recover a judgment against the defendant, Morc Industries, Inc.?

<u>YES</u>

5. If your answer to No. 4 is "yes", what amount is owing from defendant Morc Industries, Inc. to plaintiff Eatherly under the agreements?

<u>$746,623.82</u>

6. If your answer to No. 4 is "no", did plaintiff Eatherly's failure or refusal to perform the contract result in damage to defendants?

_____

7. If your answer to No. 6 is "yes", what is the amount of damages which defendants should recover from plaintiff Eatherly?

_____

8. Did defendants Sczesny and Curlin conduct the business of defendant Morc Industries, Inc. as though the corporation was their individually-owned business or partnership and use the funds of defendant Morc Industries, Inc. as their own individual funds?

<u>YES</u>

Based on these findings the Trial Court entered judgment for the plaintiff decreeing:

(1) That Sczesny and Curlin guaranteed payment to Eatherly of the·indebtedness owed by Morc in the event of default of Morc, which default occurred.

(2) That Sczesny and Curlin conducted the business of Morc as though the corporation was an individually owned business or partnership and used the funds of Morc as their own individual funds so that Morc was rendered insolvent, thereby committing a fraud upon Eatherly, a creditor of Morc.

(3) That Eatherly have and recover from Morc, Sczesny and Curlin the sum of $746,623.82.

(4) That the cross-complaint filed against Eatherly be dismissed.

There are forty-two separate assignments and sub-assignments of error which fall into five categories: (1) Evidentiary complaints; (2) errors in the Court's charge to the jury; (3) complaints regarding the Trial Judge's conduct of the trial; (4) insistence that there was no material evidence to support the judgment; and (5) insistence that the findings of the jury and judgment of the Court were excessive as to damages.

Assignments I(a)–(b); II(a)–(c); III(a)–(c); IV(a)–(e); and V(a)–(f), being nineteen in number, all relate to evidence admitted or excluded by the Court in the course of trial. We have carefully reviewed each of these assignments and find that fifteen of them are wholly without merit and do not warrant individual treatment. We find that the remaining four hereinafter discussed have some merit, but from an examination of the entire record it does not affirmatively appear that the errors complained of affected the results of the trial. T.C.A. 27–117.

Assignments III(a) and V(d) are directed to the refusal of the Trial Court to admit into evidence a letter from the plaintiff, Eatherly, to Morc Industries dated May 7, 1974, identified as Exhibit D for identification purposes. The Trial Court excluded this letter on the theory that it was not admissable to vary the terms of the written contract dated June 27, 1974, entered into more than six weeks after the letter was written. We agree that the letter was not admissable for this purpose, but we find that the letter was admissable in support of the affirmative defense set forth by the defendants in paragraph sixteen of their answer as follows:

16. Defendants aver that before the signing of the contract, the plaintiff held himself out to the defendants to be an efficient and knowledgeable mover of earth and minerals, capable of efficient operation and possessing efficient strip mining machinery. Defendants aver that the aforementioned representations were not true, that the defendants relied upon said statements in entering into the contract, and that said representations constitute fraud in the inducement causing tremendous damages to the defendants.

However, taking all the evidence in the record in the light most favorable to the defendants together with the contents of the May 7, 1974 letter,[1] we find that there is no material evidence to support the defendants' defense of fraud in the inducement. Therefore, the exclusion of the letter was harmless error.

Assignment IV(c) is directed to the ruling of the Court in sustaining an objection of plaintiff's attorney to a question propounded by defendants' attorney to the plaintiff on cross-examination relating to an alleged verbal modification of the contract at a point in time when plaintiff had been operating under the contract for several months. The question propounded to the plaintiff was as follows:

Q. I presume, then, that you specifically deny that you promised him that from that point on the cost of your services would be changed to $12.00 per ton retroactive to the beginning?

█ Plaintiff's attorney objected to the question and there ensued a lively discussion involving the Court and the attorneys for the respective parties. This discussion, most of which was outside of the presence of the jury, consumes more than ten pages of the transcript; and it appears that by the time the discussion was concluded all involved had lost the exact question in the broader issues being debated. The objection was sustained, and the plaintiff did not answer that specific question at that point in the trial. From our vantage point it appears that the question was proper on cross-examination and the witness should

have been allowed to answer. However, throughout the record there was conflicting testimony of discussions, representations and agreements relating to charges based upon a maximum per ton of coal mined. The plaintiff was examined upon this subject extensively and repeatedly, and it is inconceivable that the ruling of the Trial Court in this particular instance affected the results of the trial.

Assignment V(c) is directed to the Court's excluding certain portions of the testimony of C. L. Smith, witness for the defendants. On direct examination the attorney for the defendants attempted to elicit from the witness testimony relating to the witness' personal knowledge of the fact that Eatherly had available to him certain documents during the period of negotiations and discussions preliminary to the execution of the contract. In his testimony Eatherly had stated that he had no recollection of having seen and examined the documents in question. Also, Smith was questioned outside the presence of the jury, about statements made by Eatherly in his presence with respect to his best judgment as to his ability to mine the coal at or below a specified cost per ton. The attorney for the defendants sought to present this evidence to the jury in an effort to impeach the prior testimony of the plaintiff and in support of the insistence that the plaintiff had been guilty of fraud in the inducement of Morc to execute the contract. The excluded testimony of Smith was evidence of the same kind and character as set forth in the May 7, 1974, letter from Eatherly to Morc, and we find

1. The relevant portions of the letter are as follows:

I do have a copy of the geological report showing the approximate depth down to this coal and the approximate thickness of the coal. I feel that the price of coal on today's market and as stated in a letter from John W. Rich of Delta Coal Company, it would be profitable to strip this coal, however, since I have not stripped coal now for several years I have not studied this area and can not give an exact price of what it would cost to strip and load this. It is possible I could get closer to it before we actually write a contract.

.    .    .    .    .

In discussing with C. L. Smith and Peter B. Curlin, officers of your Company, we found that coal is being stripped and loaded into the tipple rail cars and the barge loading ramp between $7.50 and $9.50 a ton. We feel like that as the work progresses on a cost plus basis, that we will be able to create a saving for the Owner and consequently we will benefit on a bonus program of one dollar per ton, as you people have discussed with us.

It is our intention to put the necessary equipment onto this project to ultimately deliver forty thousand tons a month. As you know this will benefit the Eatherly Construction Company with the bonus plan which we will contract with you people later.

that for the same reasons the Court erroneously withheld this portion of the testimony of Smith from the jury. However, again, from an examination of the entire record it does not affirmatively appear that this error affected the results of the trial.

The fourteen separate assignments designated VI(a)–(h) and IX(a)–(f) constitute complaints regarding the Court's charge. Defendants submitted to the Court nineteen special requests of which nine were granted and ten were denied. Several of these assignments relate directly to portions of the Court's charge included at the request and insistence of defendants.

In assignment VI(a) defendants insist that the Court was in error in instructing that plaintiff was seeking recovery for reimbursement of taxes and insurance when plaintiff had neither pled nor proven those elements of damage. We find that the written contract between the parties specifically provides in paragraph four for the reimbursement to Eatherly "for all material furnished, all taxes and insurance and extra labor . . .", and this contract was exhibited to and made a part of plaintiff's original complaint. This same language is repeated verbatim in paragraph eight of the complaint, and plaintiff's proof included invoices reflecting these charges. Therefore, the Court properly instructed the jury in this respect.

In assignment VI(c) defendants insist that the Court erred in failing to instruct the jury on defendants' pled defense of unconscionability. We note that defendants' special request number nine related generally to this issue, and the Court declined to grant that special request. After carefully reviewing all the proof in the case together with the eight Issues of Fact submitted to the jury, we find that the Court's failure to instruct on this issue did not constitute error.

Assignment VI(f) faults the Trial Court in failing to remove from the consideration of the jury the question of the personal obligations of defendants Sczesny and Curlin under the letter of guaranty with

respect to those charges of plaintiff based on an oral modification of the written contract. At the conclusion of all the proof the defendants failed to make a motion to withdraw this issue from the jury, and, in fact, they submitted to the Court their special request number six relating to this issue. Issues of Fact numbered two and three submitted to the jury related directly to the letter of guaranty, and the defendants made no objection to any of the Issues of Fact as submitted by the Court. We find that this issue was properly submitted to the jury and that, in any event, defendants have waived their right to rely on this assignment in this Court.

Assignments VI(b), (d), (e), (g) and (h) are variously directed to the Court's failure to instruct with reference to the three versions of the same written contract, parol evidence, fraud, legal standards with reference to misuse of the corporate entity, and speculation as to the evidence. The defendants submitted no special requests on any of these subjects, and it was not error for the Court to fail to instruct the jury in regard thereto. *Rule v. Empire Gas Corp.*, 563 S.W.2d 551 (Tenn.1978). The Court properly charged the jury on the subject of amending a written contract, and this portion of the charge was adequate to cover the situation to which assignment VI(b) was addressed. The term "parol evidence" was contained in special requests numbered four and five submitted by defendants and charged by the Court, and this term is not otherwise found in the charge. Defendants failed to include a definition of the term in either of their said requests, and they have no standing to now insist that failure of the Court to define the term was error. Likewise, the term "fraud" was contained in special requests numbered one and eleven submitted by the defendants and charged by the Court and is not otherwise found in the charge outside of Issue of Fact number one wherein the word "fraudulently" is used. Defendants failed to make objection to the Issues of Fact submitted to the jury and under the circumstances the Court's failure to otherwise define the term "fraud" did not constitute error.

Assignment VI(g) is directed to the failure of the Court to instruct the jury with regard to the legal standard to be applied in determining whether defendants Sczesny and Curlin so treated their corporation, Morc, as to render the corporation's separate existence meaningless. The Court submitted to the jury Issue of Fact number eight seeking a finding of fact related to this legal question. Again, defendants failed to object to this Issue of Fact. Based upon the jury's determination the Court found as a matter of law that the corporation's separate existence was meaningless. The Court's failure to further instruct the jury on this subject was not improper.

■ In assignment VI(h) defendants fault the Court for failing to instruct the jury that it was not allowed to speculate as to the evidence. The Court clearly charged the jury with respect to each and every Issue of Fact specifically designating the party which had the burden of proof and giving instructions in the event the evidence was found to be evenly balanced. The Court in its charge with respect to all eight Issues of Fact left no room for misunderstanding by the jury. It was not necessary for the Court to instruct the jury in the exact words that "it was not allowed to speculate as to the evidence", and the failure to do so is not error.

■ Assignment IX is directed to the Court's action in denying six of defendant's special requests. Two of the requests in question consist of quotes from Federal cases and two consist of quotes from *Corpus Juris Secundum*. The remaining two requests involve a quote from a Wisconsin case and a portion of Section 23–201 of T.C.A. We find the Court's charge as given to be clear, concise, and adequate to cover all matters relating to the Issues of Fact submitted to the jury. The jury was not called upon to return a general verdict but merely to respond to the eight specific questions of fact. We find no error in the charge given by the Court, and we specifically find and hold that the action of the Court in denying these six special requests did not constitute error. See *Gibson's Suits in Chancery*, Sec. 592 (5th ed. 1956).

■ In the seven assignments designated VII(a)–(c), VIII(a)–(c), and X, defendants broadly attack with great zeal the Trial Judge and his conduct of the entire trial. All seven assignments are encompassed in the sweeping language of assignment X as follows:

The Court erred in denying the defendants a fair trial by jury in that the cumulative effect of the Court's ruling, statements and action throughout the trial, and of its instruction and/or lack thereof to the jury, and its bias so obvious, prejudiced the jury so that a fair trial became impossible. The Court's belated efforts to dissuade the jury's mind of its bias in its instructions to the jury was ineffective and served no useful purpose to the defendants.

We find that this attack on the Trial Court is unwarranted. These complaints are purely argumentative and fail to point to any error in the entire trial proceeding. The record clearly reflects that the Trial Judge was most competent and patient in presiding over a lengthy and complicated trial under difficult circumstances. The cause was well tried by capable and zealous adversaries who were given every proper consideration and great latitude by an unbiased presiding judge. There is absolutely no merit to any of these seven assignments.

■ Defendants in assignment XI charge that there was no material evidence to support the findings of the jury and judgment of the Court. The amount of the judgment entered against the defendants was the exact amount sued for by plaintiff and found by the jury in answer to Issue of Fact number five. This same figure was testified to by the plaintiff and supported by invoices and estimates made exhibit to his testimony. There was voluminous proof in this record on all issues in controversy, and we find ample material evidence to support the findings of the jury and the judgment of the Court.

It follows that assignment XII to the effect that the findings of the jury and

judgment of the Court were excessive is also without merit. The amount of the award was well within the proof. After the jury had accepted the theory of the plaintiff on all of the major controverted issues of fact, it had little discretion under the proof as to the amount of the award. The Trial Judge did no more than approve the verdict of the jury by entering a decree consistent with the jury's findings on the questions of fact submitted to it.

Accordingly, all forty-two assignments of error are overruled. The Trial Court having committed no reversible error and there being material evidence to support the verdict of the jury, the judgment of the Trial Court is in all things affirmed. The appellants will pay the costs of their appeal.

SHRIVER, P. J., and FRANKS, J., concur.